**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Arthur Barry Sotloff Individually | : |
| And as the Administrator | : |
| Of the Estate of Steven Joel Sotloff | : |
| | : |
| and | : |
| | : |
| Shirley Goldie Pulwer | : |
| | : |
| and | : |
| | : |
| Lauren Sotloff | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| | : |
| SYRIAN ARAB REPUBLIC | : |
| Damascus, Syria | : |
| | : |
| | : |
| Defendant | : |
| ……………………………………………………: | |

**COMPLAINT**

Plaintiffs bring this action pursuant to the provisions of the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1602, *et seq.* (hereinafter "FSIA").

**Introduction**

1.      This action arises out of the September 2, 2014, beheading of Steven Sotloff by the terrorist organization Islamic State in Syria and the Levant (hereinafter "Daesh"[1]).  At the time, Daesh was operating with the material support of the Syrian Arab Republic (hereinafter "Syria" or "Assad Regime").  Syrian President Bashar al-Assad (hereinafter "Assad") and his security apparatus helped create and thereafter greatly assisted Daesh, which was nothing more than its sham opponent in the Syrian civil war, to bolster Syria's negotiating power vis-a-vis the Western powers that had been seeking the end of the Assad regime.  Assad's plan was to cooperate with Daesh to destroy the moderate opposition leaving Daesh as his only opponent in the Syrian civil war, and to feign meaningful participation in the struggle against Daesh or Al Qaeda.  At all times relevant to this complaint, Syria provided material support to Daesh, such as financial support, provision of materiel, and military air support.  Over this same period, Syria also provided direct instructions to Daesh through embedded intelligence officers.  The abduction and brutal murder of journalists such as Steven Sotloff benefited the Assad Regime in that these heinous acts shifted the focus of Western powers from removing the Assad Regime in the aftermath of the Arab Spring to the destruction of Daesh with the Assad Regime as a necessary ally.  Steven Sotloff was the victim of "torture" and "extrajudicial killing," as defined in the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, and suffered "personal injury" and "death" which are compensable under 28 U.S.C. § 1605A.

---

[1] The terrorist group Daesh is also commonly referred to as the Islamic State of Iraq and the Levant (ISIL).  "Daesh" is the Romanization of the Arabic acronym for ad-Dawlah al-Islāmiyah fīl-ʿIrāq wash-Shām.  Though its literal meaning is the same as the English acronym "ISIL," many world leaders prefer to use the terms "Daesh" as it is somewhat pejorative.  "Daesh" is a homophone with the Arabic words Daes ("one who crushes something underfoot") and Dahes ("one who sows discord").  For similar reasons, we will refer to this group as "Daesh."

2.      Steven Sotloff was a loving son and brother, and an extraordinary journalist. Before his murder, Steven was part of the team of journalists that returned to Benghazi, Libya after the attack on the U.S. Embassy compound.  Steven's interviews with Libyan security guards were crucial in identifying the militants responsible for the attacks and their leader.  Part of Steven's ability to break stories in such a hostile environment was a reflection of his deep empathy and open personality.  Steven covered the civil wars in Libya and Syria because he cared deeply about the people of those countries.  Traumatized victims of these civil wars, normally wary of journalists, would open up to Steven.  As his mother explained in a plea to Daesh for her son's life, "Steven is a journalist who traveled to the Middle East to cover the suffering of Muslims at the hands of tyrants. Steven is a loyal and generous son, brother and grandson.  He is an honorable man and has always tried to help the weak."

3.      The August 4, 2013 kidnapping and September 2, 2014 beheading of Steven Sotloff by Daesh, which greatly benefited from the material support provided by the Syrian Arab Republic, form the factual basis for this action.

Plaintiffs state the following in support of their Complaint:

## The Parties

### A.      The Plaintiffs

4.      The Plaintiffs brought this action, by and through their counsel, in the individual capacity of each Plaintiff and, as appropriate, in the capacity of as Personal Representative of the estate of Steven Joel Sotloff, for their own benefit, and for the benefit and on behalf of all those legally entitled to assert a claim under the FSIA, state common law, and statutory law.

5.      Plaintiff Arthur Barry Sotloff at all times relevant hereto was and is the father of Steven Joel Sotloff.  Arthur Barry Sotloff is a citizen of the United States of America who

resides in the state of Florida.  Plaintiff Arthur Barry Sotloff can sue and be sued in this court.

Arthur Barry Sotloff brings this suit in his own capacity and in his capacity as Personal

Representative of the Estate of Steven Joel Sotloff.

6.      Plaintiff Shirley Goldie Pulwer at all times relevant hereto was and is the mother

of Steven Joel Sotloff.  Plaintiff Shirley Goldie Pulwer is a citizen of the United States of

America who resides in the state of Florida.  Plaintiff Shirley Goldie Pulwer can sue and be sued

in this Court.

7.      Plaintiff Lauren Sotloff at all times relevant hereto was and is the sister of Steven

Joel Sotloff.  Plaintiff Lauren Sotloff is a citizen of the United States of America who resides in

the state of Florida.  Plaintiff Lauren Sotloff can sue and be sued in this court.

**B.      The Defendant**

8.      Defendant Syria is a foreign state that was designated a state sponsor of terrorism

on December 29, 1979, pursuant to section 6 of the Export Administration Act of 1979, 50

U.S.C. App. § 2405, section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and

section 40 of the Arms Export Control Act, 22 U.S.C. § 2780.  Syria has remained so designated

continuously ever since.

9.      According to the State Department's 2014 Country Reports on Terrorism:

Syrian government awareness and encouragement for many years of violent
extremists' transit through Syria to enter Iraq, for the purpose of fighting Coalition
Troops, is well documented. Syria was a key hub for foreign fighters en route to
Iraq. Those very networks were the seedbed for the violent extremist elements,
including ISIS [Daesh], which terrorized the Syrian and Iraqi population in 2014
and – in addition to other terrorist organizations within Syria – continued to attract
thousands of foreign terrorist fighters to Syria in 2014 . . . .

As part of a broader strategy during the year, the regime still attempted to portray Syria itself as a victim of terrorism, characterizing all of its armed opponents as "terrorists."[2]

10.     It is the U.S. Department of State's current position that Assad is "actively seeking to bolster [Daesh] for his own cynical reasons," namely to portray himself to Western powers as a partner in the war on terror, to destroy other anti-Assad militias, and to make his administration a more palatable alternative to Daesh for Syrian minority groups.[3]

## JURISDICTION AND VENUE

11.     Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2) and 1605A.

12.     Pursuant to the FSIA and related statutes, defendant Syria is subjected to suit in the courts of the United States as the material supporter of Daesh.  Syria's material support for Daesh caused the abduction and murder of Steven Sotloff.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

14.     28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a state sponsor of terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for

---

[2] U.S. Dep't State, Bureau of Counterterrorism, Country Report on Terrorism 2014 288 (2015), http://www.state.gov/documents/organization/239631.pdf.
[3] Ruth Sherlock et al., *US Accuses Assad Regime of Helping Islamic State by Targeting Rival Rebels in Strike*, Telegraph (June 2, 2015), http://www.telegraph.co.uk/news/worldnews/islamic-state/11645434/US-accuses-Assad-regime-of-helping-Islamic-State-by-targeting-rival-rebels-in-strikes.html

wrongful death, personal injury and related torts caused by an act of torture or extrajudicial killing or the provision of material support and resources for such acts.

## THE RISE OF DAESH

15.    In 2004, following the U.S.-led invasion of Iraq, al-Qaeda in Iraq ("AQI"), led by Abu Musab al-Zarqawi ("Zarqawi"), became a leading force in the anti-American insurgency and sectarian war.  AQI distinguished itself through its military effectiveness, brutality against rival Sunni factions, and gruesome murders of Shiite civilians.

16.    AQI's methods caused a backlash within Sunni enclaves, which formed militia groups that often cooperated with U.S. forces against AQI.  AQI eventually lost the support of al-Qaeda "central" and became stigmatized within the Iraqi insurgency and the Sunni community.

17.    Following its loss of influence in Iraq, in January 2006, AQI merged with several terrorist groups to create the Mujahadeen Shura Council.

18.    In June 2006, Zarqawi was killed by U.S. forces in Hibhib, Iraq.

19.    In October 2006, the Mujahadeen Shura Council proclaimed the formation of the Islamic State of Iraq ("ISI"), under the leadership of Abu Ayyub al-Masri and Abu Adullah al-Rashid al-Baghdadi.

20.    In April 2010, Abu Ayyub al-Masri and Abu Adullah al-Rashid al-Baghdadi were killed in a joint U.S.-Iraqi operation, and Abu Bakr al-Baghdadi ("al-Baghdadi") took over leadership of ISI.

21.    In April 2013, having merged with the al-Nusra Front and expanded into Syria, ISI adopted the name Islamic State of Iraq and the Levant, also widely known as "Daesh."

22.     In *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53 (D.D.C. 2008), this court found Syria liable for the AQI beheadings of two U.S. civilian contractors in Iraq.  The court found that beginning in 2003 at the latest Syria provided material support to AQI and Zarqawi including training at facilities in Syria, free passage through Syria accompanied by Syrian intelligence officers, transportation across the Syria-Iraq border, false documents, safe haven in Syria, weapons, and funding.

23.     Syria has provided material support to Daesh through each iteration of the group and each generation of leadership, from Zarkawi to al-Masri to al-Baghdadi, facilitating horrific terroristic attacks in Iraq and Syria.  When the Arab Spring came to Syria in January 2011, the Assad Regime came to rely on Daesh for its very existence, as described in greater particularity at paragraphs 24-36.

### SYRIA'S MATERIAL SUPPORT OF DAESH (AKA ISIS/ISIL)

24.     The Assad Regime deliberately facilitated the creation of Daesh from its precursor groups of ISI and the al-Nusra Front. The Assad Regime provided Daesh with critical material support at crucial times during its metastasis from an isolated group of terrorists into a quasi-terrorist "state" that subsequently kidnapped and murdered Steven, and the Assad Regime remains one of Daesh's primary material supporters.

25.     In January 2011, Syrian citizens began peaceful protests as a response to the region's "Arab Spring."  By March 2011, these protests had evolved into massive anti-governmental opposition rallies and civil disobedience.  By April 2011, Bashar-al Assad's attempts to pacify the protestors had failed and the Syrian government deployed military forces to suppress the opposition movement.  This escalation failed.  As the situation continued to spiral out of control, the Syrian General Security Directorate released hundreds of Islamist extremists

from prison from June to October 2011.[4]  These freed extremists constitute the majority of

Daesh's current leadership.[5]

      26.     According to a former member of the Syrian Military Intelligence Directorate,

"the [Assad] regime did not just open the door to the prisons and let these extremists out; it

facilitated them in their work, in the creation of armed brigades."[6]  According to this former

Military Intelligence Directorate official, since at least the summer of 2011 Syria has officers

embedded within Daesh and its precursors as well as within other Islamist groups operating in

Syria.  Through these officers, Assad directs attacks against other Islamist groups or even against

other branches of the Syrian security services.[7]  As this former intelligence officer reported, "the

regime wanted to tell the world it was fighting Al Qaeda but the revolution was peaceful in the

beginning so it had to build an armed Islamic revolt.  It was a specific, deliberate plan and it was

easy to carry out.  There were strong Islamic tendencies to the uprising so it just had to

encourage them."[8]

      27.     Another former regime official reported that Syria supplied weapons to these

freed prisoners, stating, "this is not something I heard rumors about, I actually heard the orders, I

have seen it happening. These orders came down from [Military Intelligence] headquarters in

Damascus."[9]

---

[4] Phil Sands et al., *Assad Regime Set Free Extremists from Prison to Fire Up Trouble During Peaceful Uprising*, Nat'l (Jan. 21, 2014), http://www.thenational.ae/world/syria/assad-regime-set-free-extremists-from-prison-to-fire-up-trouble-during-peaceful-uprising#full.
[5] Simon S. Cordall, *How Syria's Assad Helped Forge ISIS*, Newsweek (June 21, 2014), http://www.newsweek.com/how-syrias-assad-helped-forge-isis-255631.
[6] Sands, *supra* note 4.
[7] *Id.*
[8] *Id.*
[9] Michael Weiss & Hassan Hassan, ISIS: INSIDE THE ARMY OF TERROR (2015).

28.     As Affaq Ahmad, the former right hand to Syrian Air Force Intelligence Chief, General Jamil Hasad, explained, "actually, the [infiltrated] jihadist groups and brigades were very useful for the regime because they provided a justification for the regime's insistence on a military solution [to the civilian uprising], and provided some legitimacy under the cover of the War on Terror."[10]   Ahmad went on to explain that Daesh, acting as a foil for the Assad Regime, not only granted Syria some measure of international legitimacy, it also encourage Syria's non-Sunni minorities to rally around the Assad Regime.  Specifically, he stated that certain Islamist groups such as Daesh, "did not cross the red lines that were agreed on by the regime and their sponsors. This included the regime accepting the killing by those groups of Alawis and Druze in order to use that to convince these minorities to rally around the regime and hold on to it."[11]

29.     Since Assad's creation of Daesh's precursor groups as a cynical political foil in 2011, Syria has become one of Daesh's largest trading partners.

30.     In 2013, Daesh fighters captured the oil fields of eastern Syria.  By January 2013, reports corroborated by The Guardian demonstrated that Syria was purchasing oil from Daesh and Daesh affiliates.[12]  Syria has become a mass consumer for the oil that Daesh plunders, which is worthless without such a large scale buyer.  Considering the array of forces aligned against Daesh, it does not have many potential buyers of its oil, and those few options are limited to those with immediate geographic proximity.  If not Syria, then it would be difficult to see who would be able to purchase Daesh's oil on a mass scale.

---

[10]  Michael B. Kelley, *It's Becoming Clear that Assad Fueled the Al-Qaeda Surge that has Kept Him in Power*, Bus. Insider (Jan. 21, 2014), http://www.businessinsider.com/assad-helped-build-al-qaeda-in-syria-2014-1.
[11] Michael Weiss, *Assad's No Enemy of al-Qaeda*, NOW (July, 31, 2013), https://now.mmedia.me/lb/en/commentaryanalysis/assads-no-enemy-of-al-qaeda.
[12] Kelley, *supra* note 9.

31.     Not only is the Assad Regime a customer for Daesh oil, it is also providing

critical the technical expertise required to run some of the oil and gas installations controlled by

Daesh.

32.     Commenting on Syria's commercial and logistical support for Daesh, UK Foreign

Secretary stated that "Assad's 'war' on [Daesh] is a sham and that he supports them

financially."[13]  According to Danny Glaser, Assistant Secretary for Terrorist Financing at the

U.S. Treasury Department, "the Assad regime needs the oil, ISIS needs the cash, and they're

willing to do business even as they're fighting each other."[14]

33.     In October 2014, the Undersecretary of the Treasury Department, David Cohen,

said that oil commerce is a "key source" of Daesh's operating revenue, earning approximately $1

million per day.[15]

34.     In March 2015, the European Union imposed sanctions against George Haswani,

a Syrian businessman who, according to the implementing regulations, "provides support and

benefits from the [Assad] regime through his role as a middleman in deals for the purchase of oil

from [Daesh] by the Syrian regime."[16]

35.     Syria's support for Daesh extends beyond the commercial world.  In June 2015,

the United States Department of State found that Syria was launching airstrikes on behalf of the

---

[13] *Revealed: The Oil Middleman Between the Syrian Regime and ISIS*, Bus. Insider (Mar. 7, 2015), http://www.businessinsider.com/revealed-the-oil-middleman-between-the-syrian-regime-and-isis-2015-3.
[14] *This World: World's Richest Terror Army*, (BBC Two television broadcast Apr. 22, 2015), http://www.bbc.co.uk/programmes/b05s4ytp
[15] *Syrian Regime, Iraqi Kurds Among Those Buying ISIS Oil: Official* (Oct. 23, 2014), http://www.nbcnews.com/news/world/syrian-regime-iraqi-kurds-among-those-buying-isis-oil-official-n232381.
[16] 2015 O.J. (L 64) 10,  http://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32015R0375&from=EN.

Islamic State in its advance on the Syrian city of Aleppo.[17]  These airstrikes were part of a joint

effort by the Assad Regime and Daesh to retake Aleppo from a coalition of Islamist and

moderate rebel groups.[18]

36.      On June 1, 2015, U.S. State Department spokesperson Marie Harf stated that

"[Assad] does not want to use his forces to root out [Daesh's] safe haven in Syria, but really on

the contrary, is actively seeking to bolster their position for his own cynical reasons."[19]  Daesh

defectors have also confirmed that the Assad's war on Daesh is a sham, reporting that they slept

soundly knowing that Syrian airstrikes would be used to target their opponents, not them.[20]

## DAESH'S ABUDCTION AND BEHEADING OF STEVEN SOTLOFF

37.      On August 4, 2013, Journalist Steven Sotloff crossed from Turkey into Syria.

Just inside the border, Steven met his "fixer" and translator, Yosef Abobaker, at around 10 a.m.

local time.  Steven intended to travel with Abobaker to Aleppo, where he had previously

reported on the city's humanitarian crisis from 2012 to early 2013.

---

[17] Erica Wenig, *US Embassy Accuses Syrian Regime of Supporting ISIS Advance*, Daily Caller
(June 2, 2015), http://dailycaller.com/2015/06/02/us-embassy-accuses-syrian-regime-of-
supporting-isis-advance/; Tara Copp, *State: Syria's Assad Directly Supporting ISIS*, Wash.
Examiner (June 2, 2015), http://www.washingtonexaminer.com/state-syrias-assad-directly-
supporting-isis/article/2565466
[18] Alessandria Masi, *Syria's Coming Battle For Aleppo: It's Everybody Against Assad and ISIS*,
Int'l Bus. Times (June 6, 2015), http://www.ibtimes.com/syrias-coming-battle-aleppo-its-
everybody-against-assad-isis-1955134
[19] Ruth Sherlock et al., *US Accuses Assad Regime of Helping Islamic State by Targeting Rival
Rebels in Strikes*, Telegraph (June 2, 2015),
http://www.telegraph.co.uk/news/worldnews/islamic-state/11645434/US-accuses-Assad-regime-
of-helping-Islamic-State-by-targeting-rival-rebels-in-strikes.html
[20] Michael B. Kelley, *It's Becoming Clear that Assad Fueled the Al-Qaeda Surge that has Kept
Him in Power*, Bus. Insider (Jan. 21, 2014), http://www.businessinsider.com/assad-helped-build-
al-qaeda-in-syria-2014-1

38.     Steven, Abobaker, Abobaker's brother, and two of Abobaker's cousins boarded a minibus bound for Aleppo.  They were stopped after ten minutes by roughly twenty men with covered faces, wielding assault rifles.

39.     The armed men forced Steven and his travelling companions into two black luxury station wagons, which were used to transport them to an unknown location.  For the next year, Steven disappeared.

40.     In late 2013, Daesh transferred all of its foreign prisoners to the same makeshift holding facility beneath the Children's Hospital of Aleppo.  Steven and nineteen other male captives shared one 215 square foot cell.

41.     At an unknown date, Steven and the other captives were moved around 100 miles east from Aleppo to the de facto Daesh capital of Raqqa, Syria, where they were held in a similarly sized cell outside a petrochemical facility.

42.     Steven and the other hostages were regularly starved, beaten, as well as physically and psychologically tortured.  Before his eventual murder, Steven was subjected to numerous "mock executions."  During each "mock execution" Steven would be dragged out of his cell and prepared for execution—a gun against his head or a knife against his throat—then spared at the last moment.  This process would be repeated, with slight changes, forcing Steven to continuously rehearse his own death.

43.     On August 19, 2014, Steven appeared, accompanied by the Daesh militant known as Jihadi John in a video addressed to President Barack Obama.  In this video, Jihadi John decapitated American journalist James Foley.  The camera then panned to reveal Steven kneeling with his hands bound.  Jihadi John then informed President Obama that Steven's life "depends on your next decision."

44.     On August 27, 2014, Shirley Goldie Pulwer, Steven's mother, released a video

calling on Abu Bakr al-Baghdadi, the self-proclaimed Daesh "Caliph," to show mercy.  Steven's

mother pleaded with al-Baghdadi, saying "I've always learned that you, the Caliph, can grant

amnesty.  I ask you to please release my child.  As a mother, I ask your justice to be merciful and

not punish my son for matters he had no control over."

45.     On September 2, Daesh decapitated Steven, and distributed a video recording of

the decapitation online.

## CLAIM I – ACTION FOR WRONGFUL DEATH
### (Under 28 U.S.C. § 1605A(c) and
### State Common Law and State Statutory Law)

46.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations

set forth in all the forgoing paragraphs as if fully set forth herein.

47.     The death of Steven Sotloff was cause by a deliberate act of extrajudicial killing,

as Daesh publicly beheaded him with the material support of the Syrian Arab Republic.  He

endured pain and suffering and his estate is entitled to economic damages due to his premature

death.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley

Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the

damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary

losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them,

for the death of Steven Joel Sotloff on this Claim I, and their costs expended.

## CLAIM II – BATTERY
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

48.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations

set forth in all the forgoing paragraphs as if fully set forth herein.

49.     From August 4, 2013, to September 2, 2014, Daesh, with the material support of the Syrian Arab Republic, violently and forcefully committed illegal acts during the abduction, torture and extrajudicial killing of Steven Sotloff.  These willful, wrongful and intentional acts constitute a batter upon the person of Steven Sotloff, causing injury to him.

50.     As a direct and proximate result of the willful, wrongful and intentional act of Daesh, with the material support of the Syrian Arab Republic, Steven Sotloff was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, all to his damage.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim II, and their costs expended.

## CLAIM III – ASSAULT
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

51.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

52.     During, the abduction, detention, and extrajudicial killing of Steven Sotloff, Daesh, with the material support of the Syrian Arab Republic, intentionally and willfully put Steven Sotloff in fear for his life and apprehension of harm and injury as a direct result of the attacker's physical and mental abuse inflicted upon him.

53.     As a direct and proximate result of the willful, wrongful, and intentional act of Daesh, with the material support of the Syrian Arab Republic, Steven Sotloff was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, all to his damage.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim III, and their costs expended.

## CLAIM IV – FALSE IMPRISONMENT AND KIDNAPPING
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

54.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

55.     With the material support of the Syrian Arab Republic, Daesh willfully and illegally abducted Steven Sotloff.  The wrongful acts constitute false imprisonment and kidnapping upon the person of Steven Sotloff, causing injury to him.

56.     As a direct and proximate result of the willful, wrongful, and intentional act of Daesh, with the material support of the Syrian Arab Republic, Steven Sotloff was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, all to his damage.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim IV, and their costs expended.

## CLAIM V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

57.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

58.     The public extrajudicial killing of Steven Sotloff constitutes extreme and outrageous conduct with the intent to inflict emotional distress, including solatium, upon the victim and the victim's family.

59.     As a direct and proximate result of the willful, wrongful, and intentional act of Daesh, with the material support of the Syrian Arab Republic, Steven Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff were injured in that they endured extreme mental anguish, physical injury, and pain and suffering, all to their damage.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim V, and their costs expended.

### CLAIM VI – ACTION FOR SURVIVAL DAMAGES
#### (Under 28 U.S.C. § 1605A(c) and
#### State Common Law and State Statutory Law)

60.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

61.     Before his death, Steven Sotloff suffered extreme bodily pain and suffering, entitling his Estate to compensatory damages.

**WHEREFORE**, Plaintiff the Estate of Steven Joel Sotloff demands that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, on this Claim VI, and its costs expended.

## CLAIM VII – ACTION FOR CONSPIRACY
### (Under 28 U.S.C. § 1605A(c) and State Common Law)

62.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

63.     Defendant Syrian Arab Republic did knowingly and willfully conspire with, and agree to materially support Daesh within the meaning of 28 U.S.C. § 1605A, which willfully and deliberately committed the acts of torture and extrajudicial killing which caused the personal injuries and death of Steven Sotloff.

64.     For the reasons stated above, and having conspired to sponsor Daesh in its execution of this and other illegal acts, Defendant is liable to Plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim VII, and their costs expended.

## CLAIM VIII – ACTION FOR AIDING AND ABETTING
### (Under 28 U.S.C. § 1605A(c) and State Common Law and State Statutory law)

65.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

66.     Defendant Syrian Arab Republic did knowingly and willfully provide substantial assistance and sponsorship to Daesh within the meaning of 28 U.S.C. § 1605A, which caused the personal injury and death of Steven Sotloff.

67.     For the reasons stated above, and having aided and abetted Daesh in these illegal acts, Defendant Syrian Arab Republic is liable to Plaintiffs for all damages in this civil action.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for the damages suffered, including but not limited to pain, suffering, mental anguish, and pecuniary losses, in the amount of $10 million ($10,000,000) and pre-judgment interest, for each of them, on this Claim VII, and their costs expended.

### CLAIM IX – PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c))

68.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the forgoing paragraphs as if fully set forth herein.

69.     The actions of the Defendant and their agents, as set forth above were intentional and malicious and in willful, wanton, and reckless disregard of the rights and well-being of all Plaintiffs.  All of the acts of Daesh were facilitated by funding, military protection, and arms provided by the Syrian Arab Republic.

70.     Daesh, with the material support of the Syrian Arab Republic carried out the abduction, torture and extrajudicial killing of Steven Sotloff.  Under 28 U.S.C. § 1605A(c), Plaintiffs are entitled to an award of economic damages, solatium, pain and suffering, and punitive damages, and the same is hereby requested against Defendant in accordance with that provision.

**WHEREFORE**, Plaintiffs the Estate of Steven Joel Sotloff, Arthur Barry Sotloff, Shirley Goldie Pulwer, and Lauren Sotloff demand that judgment be entered against Defendant for punitive damages in the amount of at least three times the amount of Plaintiff's damages,

including their full compensatory damages, which include pre-judgment interest, for these acts of abduction, torture, and extrajudicial killing, on this Claim IX, and their costs expended.

The award of punitive damages, as requested, is to punish Defendant for its conduct in supporting the murderous acts described herein and to serve notice that the rule of law can and will be used to deter state sponsorship of terrorism against citizens of the United States of America.  Defendants' outrageous actions cannot be tolerated by a civilized society and deserves the harshest condemnation of our ordered legal system.

## ADDITIONAL RELIEF REQUESTED

Plaintiffs request leave of the court to amend this Complaint as the interest of justice require and such other and further relief which the Court deems just and proper.

DATED                              Respectfully Submitted,
April 18, 2016                     s/Steven R. Perles
                                   Steven R. Perles (D.C. Bar No. 326975)
                                   Edward B. MacAllister (D.C. Bar No. 494558)
                                   Joshua K. Perles (D.C. Bar No. 1031069)
                                   PERLES LAW FIRM, PC
                                   1050 Connecticut Ave, NW
                                   Suite 500
                                   Washington, DC 20036
                                   Telephone: 202-955-9055
                                   Telefax: 202-772-3101
                                   Email: sperles@perleslaw.com