UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR BARRY SOTLOFF, *et al.*,

    *Plaintiffs*,

v.

SYRIAN ARAB REPUBLIC,

    *Defendant*.

Civil Action No. 16-725 (TJK)

## MEMORANDUM OPINION

Before the Court is Plaintiffs' motion to adopt Special Master Deborah Greenspan's Report and Recommendation for compensatory damages and to award punitive damages. For the following reasons, the Court will grant Plaintiffs' motion in full and award a total judgment of $200,302,018.59 in compensatory damages and $400,604,037.18 in punitive damages.

**I.     Background**

In late 2014, James Foley and Steven Sotloff—American journalists kidnapped by jihadists while reporting on the civil war and humanitarian crisis in Syria—were executed by the Islamic State of Iraq and the Levant ("ISIS"), a terrorist organization long supported by the Syrian government. Before they were beheaded, Foley and Sotloff were held captive in various locations, where they were subjected to physical and psychological torture.[1] As a result, Foley's and Sotloff's estates and affected family members sued Syria under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), claiming that the state's material support of ISIS proximately caused the kidnappings, torture, and extrajudicial killings. After a two-day

---

[1] The Court otherwise assumes familiarity with the facts of this case, set forth in its opinion awarding Plaintiffs a default judgment against Syria. *See Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121, 127–32 (D.D.C. 2021).

evidentiary hearing, the Court entered default judgment against Syria, *see Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121 (D.D.C. 2021), appointed Deborah Greenspan as a Special Master, and requested that she prepare a report "regarding each Plaintiff's compensatory damages claims" to include "findings of fact and conclusions of law regarding each item of compensatory damages." ECF No. 48 at 2. The Court reserved the matter of punitive damages for itself. *Id.*

Relying on depositions, affidavits, expert opinions, and other evidence, the Special Master produced a detailed report containing the facts relevant to the compensatory damages claims and analyzing those facts under the law. *See generally* ECF No. 54. Plaintiffs have now moved for the Court to adopt the report, enter judgment in the same amounts suggested by the Special Master, and award punitive damages in an amount that is double the requested compensatory damages—$400,604,037.18. *See* ECF No. 55.

After reviewing the Special Master's thorough and well-written report, for which the Court thanks her, the Court adopts its factual findings and recommendations without alteration. Thus, the Court will award Plaintiffs a total judgment of $200,302,018.59 for compensatory damages, including prejudgment interest for two of the claims. In addition, for the reasons below, the Court will award punitive damages of $400,604,037.18—to be apportioned to each Plaintiff relative to their individual compensatory award.

**II.     Analysis**

Under the FSIA, a foreign state is liable to victims of state-sponsored terrorism for money damages, including "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C.A. § 1605A(c). Thus, "deceased plaintiffs' estates can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Roth v. Islamic Republic of Iran*, 78 F.

Supp. 3d 379, 401–02 (D.D.C. 2015) (citing *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010)). "To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must prove that the consequences of the foreign state's conduct were 'reasonably certain' (i.e., more likely than not) to occur, and must prove the amount of damages by a 'reasonable estimate' consistent with this [Circuit]'s application of the American rule on damages." *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003)). In determining the "reasonable estimate," courts may look to expert testimony and prior awards for comparable injury. *See Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012); *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). But in a default case, the Court may not exceed the amount demanded by the plaintiff. *See* Fed. R. Civ. P. 54(c).

As discussed below, Plaintiffs request—and the Court will award—both compensatory and punitive damages.

### A. Compensatory Damages

Before the consolidation of their cases, Plaintiffs—in their respective complaints—each sought damages for pain and suffering, economic loss, and solatium. As a result, and without objection, the Court adopts the Special Master's recommendations for compensatory damages and for prejudgment interest on the pain-and-suffering and past-economic-loss awards to Sotloff's and Foley's estates. For the reasons described in the report, the Court will award the recommended damages and prejudgment interest to each Plaintiff. *See* ECF No. 54 at 24–54. These amounts, totaling $200,302,018.59, are reflected in the following chart:

3

| Plaintiff | Pain and Suffering with Prejudgment Interest | Past Economic Loss with Prejudgment Interest | Future Economic Loss | Solatium | Total Award |
|---|---|---|---|---|---|
| Estate of Steven Sotloff | $75,076,279.55 | $245,149.08 | $684,027.00 | | $76,005,455.63 |
| Estate of James Foley | $80,320,231.73 | $282,899.23 | $443,432.00 | | $81,046,562.96 |
| Arthur Barry Sotloff | | | | $7,500,000.00 | $7,500,000.00 |
| Shirley Goldie Pulwer | | | | $7,500,000.00 | $7,500,000.00 |
| Lauren Sotloff | | | | $3,750,000.00 | $3,750,000.00 |
| John William Foley | | | | $7,500,000.00 | $7,500,000.00 |
| Diane Maria Foley | | | | $7,500,000.00 | $7,500,000.00 |
| Lt. Col. John Elliot Foley | | | | $3,250,000.00 | $3,250,000.00 |
| Mark Vincent Foley | | | | $3,125,000.00 | $3,125,000.00 |
| Kathryn Foley Simpson | | | | $3,125,000.00 | $3,125,000.00 |

*See id.* at 55.

### B.     Punitive Damages

The Court did not task the Special Master with recommending a punitive damage award. Rather, the Court reserved for itself whether this case calls for punitive damages and, if so, how much. ECF No. 48 at 2. On its own review, the Court now concludes that Syria's conduct relative to this case warrants a substantial award of punitive damages.

Under the FSIA, a foreign sovereign that sponsors terrorism may be liable for punitive damages. 28 U.S.C. § 1605A(c). Punitive damages do not compensate the victim but punish and deter future outrageous conduct by the foreign state. *See Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 55–56 (D.D.C. 2012) (citing *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009)); *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 30 (D.D.C. 2009). In deciding whether to award punitive damages, courts look to four factors:

4

"(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Doe v. Syrian Arab Republic*, No. 18-cv-66 (KBJ), 2020 WL 5422844, at *17 (D.D.C. Sept. 10, 2020) (quoting *Acosta*, 574 F. Supp. 2d at 30). Courts have found these factors satisfied when a defendant has provided material support to a terrorist organization in carrying out an act of terrorism. *See, e.g.*, *Baker v. Socialist People's Libyan Arab Jamahiriya*, 775 F. Supp. 2d 48, 85 (D.D.C. 2011) (finding that an award of punitive damages was warranted where "defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose *modus operandi* included the targeting, brutalization, and murder of American citizens and others").

Considering these four factors, and as courts have routinely found in FSIA cases brought against Syria under the terrorism exception, the Court finds that a substantial award of punitive damages is justified in this case.[2] As for the first factor, ISIS militants' treatment of Foley and Sotloff—including their kidnapping, torture, and execution—was nothing short of horrific. *See Frost v. Islamic Republic of Iran*, 419 F. Supp. 3d 112, 116 (D.D.C. 2020) (finding that the kidnapping and torture of three American citizens by members of a terrorist organization in Iraq "was a heinous act" that "caused tremendous suffering for the [victims] and affected family members"); *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 74 (D.D.C. 2008) (determining that documenting the executions of two American hostages "transformed heinous acts into

---

[2] *See, e.g.*, *Colvin v. Syrian Arab Republic*, 363 F. Supp. 3d 141, 163–65 (D.D.C. 2019) (awarding $300 million in punitive damages for the bombing of a media complex); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 53–55 (D.D.C. 2016) (awarding $300 million in punitive damages for the bombing of multiple hotels in Jordan); *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008) (awarding $300 million in punitive damages for the torture and beheadings of two American contractors).

infamous and indelible propaganda that served the Syrian political ends," warranting an award of punitive damages). The second factor also points to a substantial award. The harm caused by Syria's support of the Islamic State is unquantifiable, as it resulted in both Foley's and Sotloff's death, leading in turn to their families' emotional devastation. As for the third factor, several courts have recognized the need to deter sovereign states like Syria from committing terrorist acts in the future. *See Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 119–20 (D.D.C. 2015) (collecting cases); *see also Colvin v. Syrian Arab Republic*, 363 F. Supp. 3d 141, 163 (D.D.C. 2019) ("[O]nly a large amount of punitive damages can serve as an effective deterrent against future terrorist acts." (quoting *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88 (D.D.C. 2006)). Finally, Syria's vast wealth supports an award of punitive damages. *See Colvin*, 363 F. Supp. 3d at 163. Punitive damages are thus warranted in this case.

From there, the Court must decide the proper measure of punitive damages. Courts confronting a similar task have taken different approaches. In cases involving "exceptionally deadly attacks," courts multiply the foreign state's annual expenditures on terrorism by a factor between three and five. *See Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 59–60 (D.D.C. 2018). As a second option, where similar conduct has already been litigated, courts assign punitive damages based on the ratio of punitive to compensatory damages in those earlier cases. *See id.* at 60. Multipliers in such cases range "between one and five depending on various factors, including, among other things, whether the case involved exceptional circumstances, the perceived deterrence effect, the nexus between the defendant and the injurious acts, and the evidence plaintiffs presented regarding the defendant's funding for terrorist activities." *Hamen v. Islamic Republic of Iran*, 407 F. Supp. 3d 1, 10 (D.D.C. 2019). And a third approach simply awards $150,000,000 per affected family. *Warmbier*, 356 F. Supp. 3d at 60.

On the record before it, the Court agrees with Plaintiffs that the second approach is appropriate here, and it will award punitive damages double the compensatory damages. *See* ECF No. 55 at 2–3. Tragically, this Court is no stranger to cases like this one—involving U.S. citizens kidnapped, tortured, and killed in a foreign nation by sovereign-backed militias. *See, e.g.*, *Frost*, 419 F. Supp. 3d at 113. In *Frost,* the Court employed the second approach to calculate punitive damages, using a multiplier of two. *Id.* at 117–18. Given the relative similarity between these Plaintiffs and those in *Frost*, this Court will again use a multiplier of two and award punitive damages double the amount of compensatory damages, as Plaintiffs request. The Court will therefore award punitive damages of $400,604,037.18 to be apportioned to each Plaintiff relative to their individual compensatory awards.

## III.  Conclusion

For all these reasons, the Court will grant Plaintiffs' motion. The Court adopts the Special Master's factual findings and recommendations and awards a total judgment of $200,302,018.59 in compensatory damages. In addition, the Court will award $400,604,037.18 in punitive damages, to be apportioned to each Plaintiff relative to their individual compensatory awards. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 31, 2023